UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MK CHAMBERS COMPANY, GERALD D.
CHAMBERS and ROBERT W. CHAMBERS,

        Plaintiffs,

v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, DEPARTMENT OF LABOR,
DEPARTMENT OF TREASURY, SECRETARY
OF HEALTH AND HUMAN SERVICES,
SECRETARY OF DEPARTMENT OF LABOR
and SECRETARY OF DEPARTMENT OF
TREASURY,

        Defendants.

_____/

Civil Action No. 13-11379

Honorable Denise Page Hood


**ORDER DENYING EX-PARTE EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER**

**I.      BACKGROUND**

Plaintiffs M.K. Chambers Company ("MKC"), Gerald D. Chambers ("GDC") and Robert

W. Chambers ("RWC") filed an action on March 28, 2013 against Defendants Kathleen Sebelius,

Secretary of the United States Department of Health and Human Services; United States Department

of Health and Human Services ("HHS"); Seth Harris, Acting Secretary of the United States

Department of Labor ("DOL"); United States Department of Labor; Jacob J. Lew, Secretary of the

United States Department of the Treasury; and United States Department of the Treasury

("Treasury").  Plaintiffs allege the following claims:  Violation of the First Amendment to the

United States Constitution Establishment Clause (Count I); Violation of the First Amendment to the

United States Constitution Freedom of Speech (Count II); Violation of the First Amendment to the

2:13-cv-11379-DPH-MJH   Doc # 8   Filed 04/03/13   Pg 2 of 12   Pg ID 241

United States Constitution Expressive Association (Count III); Violation of the First Amendment

to the United States Constitution Free Exercise Clause and Freedom of Speech (Count IV); Violation

of the First Amendment to the United States Constitution Free Exercise Clause (Count V); Violation

of the Religious Freedom Restoration Act ("RFRA") (Count V); and, Violation of the

Administrative Procedure Act (Count VI).

Plaintiffs bring this action to challenge Defendants' promulgation and implementation of

certain regulations adopted under the Patient Protection and Affordable Care Act (Pub. L. 111-148,

March 23, 2010, 124 Stat. 119) and the Health Care and Education Reconciliation Act (Pub. L. 111-

152, March 30, 2010, 124 Stat. 1029) (collectively, the "Affordable Care Act"). (Comp., ¶ 1) One

of the provisions of the Affordable Care Act mandates that health plans provide coverage with

respect to women, such as additional preventive care and screenings and directs the Secretary of

HHS to determine what would constitute "preventive care" under 42 U.S.C. § 300gg-13(a)(4).

(Comp., ¶ 2) Without notice of rulemaking or opportunity for public comment, HHS, DOL and the

Treasury, adopted the Institute of Medicine ("IOM") recommendations in full and promulgated an

interim final rule ("Mandate") which requires all group health plans and health insurance insurers

offering group or individual health insurance coverage provide all FDA-approved contraceptive

methods and procedures.  76 Fed. Reg. 46621 (published Aug. 3, 2011); 45 C.F.R. § 147.130.

(Comp., ¶ 3) The Mandate requires all insurance carriers to provide, not only contraception, but also

abortion, because certain drugs and devices such as the "morning-after pill," Plan B," and "ella"

come within the Mandates's and Health Resources and Services Administration's definition of

"Food and Drug Administration-approved contraceptive methods," despite their known abortifacient

mechanisms of action.  (Comp., ¶ 5)

Plaintiffs assert that the Mandate forces employers and individuals, such as Plaintiffs, to violate their religious beliefs because it requires employers and individuals to pay for insurance from insurance issuers which fund and directly provide for drugs, devices, and services which violate their deeply held religious beliefs.  (Comp., ¶ 6)  Plaintiffs seek to enjoin Defendants from further implementing and enforcing provisions of the regulations, specifically the Mandate, asserting that the Mandate violates Plaintiffs' rights to the free exercise of religion and the freedom of speech under the First Amendment, the Religious Freedom Restoration Act, and the Administrative Procedure Act.  (Comp., ¶ 9)  Plaintiffs seek a Declaratory Judgment that the regulations, specifically the Mandate, violate Plaintiffs' rights to the free exercise of religion and the freedom of speech under the First Amendment, the Religious Freedom Restoration Act, and the Administrative Procedure Act.  (Comp., ¶ 10)

GDC is the President of MKC and its 50% shareholder; RWC is the Vice President of MKC and its other 50% shareholder.  (Comp., ¶ 19)  GDC and RWC are Christians and faith-driven individuals who are responsible for setting all policies that govern the conduct and all phases of business of MKC. (Comp., ¶ 19)  MKC has a workforce of over 120 full-time employees. (Comp., ¶ 57)  For decades, GDC and RWC, via MKC, formulated MKC's health insurance policy with Blue Cross/Blue Shield of Michigan, which specifically excluded contraception, abortion, drugs commonly referred to as "life style drugs," and otherwise exempted MKC from paying, contributing, or supporting contraception and abortion for others, or for "life style drugs."  (Comp., ¶ 20)  Plaintiffs ensured that their insurance policy contained these exclusions because they adhere to the Catholic Church's teachings regarding immorality of artificial means of contraception and sterilization, and they believe, among other things, that actions intended to terminate an innocent

human life by abortion are gravely sinful. (Comp., ¶ 21) GDC and RWC have always managed and operated MKC in a way that reflects the teachings, mission, and values of their Christian faith. (Comp., ¶ 24)  Plaintiffs also support financially and otherwise, Catholic fundraisers and other events.  (Comp., ¶ 24)  They have refused to provide financial support or otherwise, for events or entities that do not reflect the teachings, mission, and values of their Catholic faith, including requiring that their facilities remain closed and otherwise not servicing any of their customers on Sundays, eliminating any organization from a supplier list that knowingly supports, endorses, or contributes to organizations that actively participate in killing people, such as Planned Parenthood. (Comp., ¶ 24)

The Mandate not only forces Plaintiffs to finance, support and endorse contraception, abortion, and related education and counseling as health care, but also subverts the expression of Plaintiffs' religious beliefs, and the beliefs of millions of other Americans. (Comp., ¶ 40)  Plaintiffs claim that Defendants' refusal to accommodate the conscience of Plaintiffs, and of other Americans who share Plaintiffs' religious views, is highly selective. (Comp., ¶ 47) Numerous exemptions exist in the ACA, which appear arbitrary and were granted to employers who purchase group insurance which evidences that Defendants do not mandate that all insurance plans need to cover preventive services.  (Comp., ¶ 47)

Plaintiffs do not qualify for the "religious employer" exemption contained in 45 C.F.R. § 147.130(a)(1)(A) and (B).  (Comp., ¶ 66)  Since Plaintiffs do not qualify for the "religious employer" exemption, they are not permitted to take advantage of the "temporary safe-harbor" set forth at 77 Fed. Register 8725 (Feb. 15, 2012). (Comp., ¶ 67)  On January 20, 2012, Defendant Sebelius announced that there would be no change to the religious exemption, but that Defendant

HHS has not released any official rule implementing either the one-year extension or the additional forced-speech requirement that applies to Plaintiffs. (Comp., ¶ 132)  Plaintiffs assert they have complied with the Mandate, despite the fact that Plaintiffs are violating the teachings of their religious beliefs.  (Comp., ¶ 132)

This matter is before the Court on Plaintiffs' Ex-Parte Motion for Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b)(1) filed April 2, 2013.  Plaintiffs seek a temporary restraining order to permit Plaintiffs to continue to provide insurance to their employees that does not violate Plaintiffs' constitutionally and statutorily granted rights to free exercise of religion, free speech, and free association.  (Motion, ¶ 1)  Plaintiffs assert that they have been subject to irreparable harms since January 1, 2013, because the HHS became effective as to Plaintiffs on that date.  (Motion, ¶ 3)

## II.    ANALYSIS

### A.    Motion for Temporary Restraining Order

#### 1.    Standard/Certification Requirement

The sole issue presented by Plaintiffs in this Motion for Temporary Restraining Order is whether a government mandate, which forces Plaintiffs to provide health insurance that violates their sincerely held religious beliefs, right to free speech, and right to freedom of association, causes irreparable harm sufficient to warrant injunctive relief. (Motion, p. 1)  Plaintiffs cite the RFRA, the Free Exercise Clause of the First Amendment and the Free Speech and Expressive Association Clause of the First Amendment, as a basis for the issuance of the temporary restraining order.

Plaintiffs filed the instant Motion for Temporary Restraining Order citing Fed. R. Civ. P. 65(b)(1).  Rule 65(b) of the Federal Rules of Civil Procedures provides the Court with authority to

issue a temporary restraining order as follows:

>    Rule 65(b)  Temporary Restraining Order.
>
>    **(1)     *Issuing Without Notice*.** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
>>    (A)     specific facts shown by affidavit or by a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;
>>
>>    (B)     the movant's attorney certifies to the court in writing any efforts made to give the notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). A temporary restraining order expires 14 days after entry of the order granting the motion. Fed. R. Civ. P. 65(b)(2).

Rule 65(b) is clear that the possibly drastic consequences of a restraining order mandate careful consideration by a trial court faced with such a request. 1966 Advisory Committee Note to 65(b). As to the certification requirement, Plaintiffs' counsel did not certify to the court in writing any efforts made by Plaintiffs' counsel in this case to give notice to Defendant, nor were reasons given why such notice should not be required. Plaintiffs assert that Defendants have already been provided with notice of Plaintiffs' concerns, "not through this lawsuit, which was just filed on March 29, 2013, but through at least five previously filed lawsuits addressing the same issues, including two cases in the Eastern District of Michigan, wherein the court enjoined the HHS Mandate for for-profit companies indistinguishably situated and structured to the Plaintiffs," citing *Legatus v. Sebelius,* Case No. 12-12061 (E.D. Mich. Oct. 31, 2012) and *Domino's Farms Corporation v. Sebelius,* Case No. 12-15488 (E.D. Mich. Dec. 30, 2012). (Motion, ¶ 4) This statement does not fulfill the certification requirement under Rule 65(b) since Plaintiffs' counsel did not certify in

writing any efforts made to give the notice and the reasons why such notice is not required.

Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give the adverse party notice. *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 91969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504-06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered. 11 Wright & Miller at § 2951, at 507-08; *Workman v. Bredesen,* 486 F.3d 896, 904-05 (6th Cir. 2007).

### 2.      RFRA

Plaintiffs argue that the HHS Mandate substantially burdens Plaintiffs' sincere exercise of religion, violating the RFRA, 42 U.S.C. § 2000bb *et seq.* The RFRA strictly prohibits the Government from substantially burdening a person's exercise of religion, 42 U.S.C. § 2000bb-1(a), except when the Government can  demonstrate that application of the burden to the person furthers a compelling government interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000bb-1(b).  The RFRA was enacted in response to the Supreme Court's decision in *Employment Division, Department of Human Services of Oregon v. Smith,* 494 U.S. 872 (1990), where the Supreme Court held that the right to free exercise of religion under the First Amendment does not exempt an individual from a law that is neutral and of general applicability, and explicitly disavowed the test used in earlier decisions which prohibited the government from substantially burdening a plaintiff's religious exercise unless the government could show that its action served a compelling interest and was the least restrictive means to achieve that interest.  42 U.S.C. §

7

2000bb.  The purpose of the RFRA was to "restore the compelling interest test" as set forth in

*Sherbert v. Verner,* 374 U.S. 398 (1963) and *Wisconsin v. Yoder,* 406 U.S. 204 (1972).

There is no doubt that Plaintiffs sincerely hold and exercise their religious beliefs.  However,

at this preliminary stage of the litigation without a response from Defendants, the Court will not

issue a temporary restraining order based on the RFRA.  Plaintiffs do not expressly make a

distinction between the corporate entity MKC and the individual Plaintiffs, who are MKC's

shareholders.  The issue of what constitutes a "person" under the RFRA was not briefed by

Plaintiffs.

Courts have held that the Mandate in question applies only to the corporate entity, not to its

officers or owners, and that as to the individual owners, any burden imposed on them individually

by the contraception mandate is remote and too attenuated to be considered substantial for purposes

of the RFRA.  *See Hobby Lobby Stores, Inc. v. Sebelius,* 870 F.Supp.2d 1278, 1294 (W.D. Okla.

2012); *Gilardi v. Sebelius,* 2013 WL 71150, at *9 (D.D.C. Mar. 3, 2013); *Conestoga Wood*

*Specialties Corp. v. Sebelius,* 2013 WL 140110, at **10, 14 (E.D. Pa. Jan. 11, 2013); *Autocam Corp.*

*v. Sebelius,* 2012 WL 6845677, at *7 (W.D. Mich. Dec. 24, 2012); *Grote v. Sebelius,* 2013 WL

362725, at *6 (7th Cir. Jan. 30, 2013)(dissent).  At this stage of the proceedings, without benefit of

Defendants' response, Plaintiffs have not shown that Plaintiffs will prevail under the RFRA.

### 3.      First Amendment Free Exercise Clause

Plaintiffs also assert that the HHS Mandate violates the Free Exercise Clause of the First

Amendment to the United States Constitution.

The Free Exercise Clause is to secure religious liberty in the individual by prohibiting any

invasions thereof by civil authority.  *Sch. Dist. of Abington Twp. v. Schempp,* 377 U.S. 203, 223

(1963). Religious belief takes shape within the minds and hearts of individuals, and its protection is one of the more uniquely human rights provided by the Constitution. Courts have held that the nature, history and purpose of the Free Exercise Clause demonstrate that it is one of the "purely personal" rights and as such, is unavailable to a secular, for-profit corporation. *See, Conestoga Wood,* 2013 WL 140110 at * 7. An incorporation's basic purpose is to create a legal entity, with legal rights, obligations, powers, and privileges different from those of natural individuals who created it, who own it, or whom it employs. *Id.* at *8, citing *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 163 (2001). The separation between a corporation and its owners means the corporation is not the alter ego of its owners for purposes of religious belief and exercise. *Conestoga Wood,* 2013 WL at *8.

Based on the Complaint and the documents submitted with this motion, the Court is not persuaded that MKC has a right to proceed under the Free Exercise Clause of the First Amendment. As to the individual shareholders, the Court is not persuaded at this time that they have demonstrated that the Mandate violates the Free Exercise Clause based on their argument that the Mandate is not neutral nor generally applicable.

The protections of the Free Exercise Clause are applicable if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993). Where a law is found to violate the Free Exercise Clause, it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest. *Id.* at 533. The Free Exercise Clause is not violated by a "valid and neutral law of general applicability on the ground that the law proscribes conduct that a plaintiff's religion prescribes." *Employment Div., Dep't of*

*Human Res. of Or. v. Smith,* 494 U.S. 872, 879 (1990).  A neutral law of general applicability need

only be "rationally related to a legitimate government objective" to be upheld.  *Combs v. Homer-Ctr.*

*Sch. Dist.,* 540 F.3d 231, 243 (3d Cir. 2008).  Courts have held that the Women's Preventive

Healthcare Regulations are not specifically targeted at conduct motivated by religious belief.

*O'Brien v. U.S Dep't of Health & Human Services,* 2012 WL 4481208, at *8 (E.D. Mo. Sept. 28,

2012).  Even though exemptions were made for religious employers, that does not indicate that the

regulations seek to burden religion but that the government made efforts to accommodate religious

beliefs.  *Id.*  The purpose of the Women's Preventive Healthcare Regulations is not to target religion,

but instead to promote public health and gender equality.  *Id.* at *7; *Hobby Lobby,* 870 F.Supp.2d

at 1289-90.  Since courts have held that the regulations at issue do not offend the Free Exercise

Clause, the individual Plaintiffs have not carried their burden that they will likely succeed on the

merits of their  Free Exercise Clause claim.

### 4.      First Amendment Free Speech and Expressive Clause

Plaintiffs argue that their right to Free Speech and Expressive Association under the First

Amendment have been violated.  Plaintiffs assert that "the First Amendment protects nonreligious

organizations based upon moral objections to exclude individuals whose mere presence was thought

to send an objectionable message."  (Motion, p. 19)  On this basis, the Court should protect the free

speech and association of Plaintiffs who object to subsidizing and supporting certain messages and

conduct based upon their deeply held religious beliefs.

The Supreme Court has addressed this theory involving the Solomon Amendment, a statute

denying federal funding to law schools that refuse to permit military recruiters from gaining access

to campuses or to students.  *See, Rumsfield v. Forum for Academic and Institutional Rights,* 547 U.S.

47 (2006).  The Supreme Court explained that the statute "neither limits what law schools may say

nor requires them to say anything," and that the schools remain free to express whatever views they

may have on the congressionally mandated policy.  *Id.* at 60.  Courts have held that the same

reasoning applies to the contraceptive coverage requirement under the ACA.  The Sixth Circuit has

noted that as it relates to the individual mandate under the ACA, the individual mandate does not

impair plaintiffs' ability to engage in expressive conduct–they are free to voice their disapproval of

the ACA or health insurance in general, and "nothing about the statute affects the composition of

the group by making group membership less desirable."  *U.S. Citizens Ass'n v. Sebelius,* 705 F.3d

588, 600 (6th Cir. 2013).  Like the Solomon Amendment, "the contraceptive requirement 'regulates

conduct, not speech.  It affects what [employers] must *do* ... not what they may or may not say."

*Autocam,* 2012 WL 6845677, at *8.  First Amendment protection does not extend to conduct that

is not inherently expressive.  *Id.*  Based on prior courts' rulings as to the Free Speech and Free

Exercise Clause of the First Amendment, the Court finds that Plaintiffs have not carried their burden

that they will likely succeed on the merits of their Free Speech and Expressive Clause claim at this

stage of the proceedings.

### 5.      Irreparable Injury

The Court will address briefly the irreparable injury requirement under Rule 65(b), even

though it has initially found Plaintiffs are not likely to succeed on the merits.  Plaintiffs claim they

have suffered irreparable injury since January 1, 2013 and yet did not file the instant suit until March

28, 2013. Equity does not weigh in Plaintiffs' favor since they waited two months after the Mandate

was in effect as to Plaintiffs, before they filed their lawsuit.  *See, Autocam,* 2012 WL 68645677, at

*9.  Any claim of irreparable harm based on financial impact should Plaintiffs fail to comply with

the Mandate or discontinue group coverage altogether cannot be enjoined.  Injunctions are not

normally granted to protect a party from monetary harm.  It is well settled that a plaintiff's

harm is not irreparable if it is fully compensable by money damages.  *Basicomputer Corp.*

*v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *Overstreet v. Lexington-Fayette Urban County*

*Government,* 305 F.3d 566, 579 (6th Cir. 2002).  In this Motion for Temporary Restraining

Order, the Court finds that equities do not weigh in favor of a finding of irreparable injury.

III.    **CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that the Emergency Motion for Temporary Restraining Order **(Doc. No.**

**7, filed April 2, 2013)** is DENIED.

> S/Denise Page Hood
> Denise Page Hood
> United States District Judge

Dated:  April 3, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 3, 2013, by electronic and/or ordinary mail.

> S/LaShawn R. Saulsberry
> Case Manager