## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MK CHAMBERS COMPANY, GERALD D.
CHAMBERS and ROBERT W. CHAMBERS,

         Civil Action No. 13-11379

    Plaintiffs,

         Honorable Denise Page Hood

v.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, DEPARTMENT OF LABOR,
DEPARTMENT OF TREASURY, SECRETARY
OF HEALTH AND HUMAN SERVICES,
SECRETARY OF DEPARTMENT OF LABOR
and SECRETARY OF DEPARTMENT OF
TREASURY,

    Defendants.
_____/

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
### and
### ORDER GRANTING MOTIONS TO FILE AMICUS CURIAE BRIEFS

## I.    BACKGROUND

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction filed April

26, 2013.  Plaintiffs did not cite the rule they are proceeding under, but Rule 65(a) of the Rules of

Civil Procedure governs motions for preliminary injunction.  Defendants filed a response, combined

with a Motion to Dismiss, which the Court considers separately.  The E.D. Mich. CM/ECF rules

provide that "a response or reply to a motion must not be combined with a counter-motion."

CM/ECF Pol. & Proc. R5(e).  A reply was filed to the response and a hearing held on the matter.

Plaintiffs M.K. Chambers Company ("MKC"), Gerald D. Chambers ("GDC") and Robert

W. Chambers ("RWC") filed an action on March 28, 2013 against Defendants Kathleen Sebelius,

Secretary of the United States Department of Health and Human Services; United States Department of Health and Human Services ("HHS"); Seth Harris, Acting Secretary of the United States Department of Labor ("DOL"); United States Department of Labor; Jacob J. Lew, Secretary of the United States Department of the Treasury; and United States Department of the Treasury ("Treasury"). Plaintiffs allege the following claims: Violation of the First Amendment to the United States Constitution Establishment Clause (Count I); Violation of the First Amendment to the United States Constitution Freedom of Speech (Count II); Violation of the First Amendment to the United States Constitution Expressive Association (Count III); Violation of the First Amendment to the United States Constitution Free Exercise Clause and Freedom of Speech (Count IV); Violation of the First Amendment to the United States Constitution Free Exercise Clause (Count V); Violation of the Religious Freedom Restoration Act ("RFRA") (Count V); and, Violation of the Administrative Procedure Act (Count VI).

Plaintiffs bring this action to challenge Defendants' promulgation and implementation of certain regulations adopted under the Patient Protection and Affordable Care Act (Pub. L. 111-148, March 23, 2010, 124 Stat. 119) and the Health Care and Education Reconciliation Act (Pub. L. 111-152, March 30, 2010, 124 Stat. 1029) (collectively, the "Affordable Care Act"). (Comp., ¶ 1) One of the provisions of the Affordable Care Act mandates that health plans provide certain coverage with respect to women, such as additional preventive care and screenings and directs the Secretary of HHS to determine what would constitute "preventive care" under 42 U.S.C. § 300gg-13(a)(4). (Comp., ¶ 2) Without notice of rulemaking or opportunity for public comment, HHS, DOL and the Treasury, adopted the Institute of Medicine ("IOM") recommendations in full and promulgated an interim final rule ("Mandate") which requires all group health plans and health insurance insurers

offering group or individual health insurance coverage provide all FDA-approved contraceptive methods and procedures.  76 Fed. Reg. 46621 (published Aug. 3, 2011); 45 C.F.R. § 147.130. (Comp., ¶ 3)  The Mandate requires all insurance carriers to provide, not only contraception, but also certain drugs and devices such as the "morning-after pill," Plan B," and "ella" which come within the Mandates's and Health Resources and Services Administration's definition of "Food and Drug Administration-approved contraceptive methods," despite their known abortifacient mechanisms of action.  (Comp., ¶ 5)

Plaintiffs assert that the Mandate forces employers and individuals, such as Plaintiffs, to violate their religious beliefs because it requires employers and individuals to pay for insurance from insurance issuers which fund and directly provide for drugs, devices, and services which violate their deeply held religious beliefs regarding contraception and abortion.  (Comp., ¶ 6)  Plaintiffs seek to enjoin Defendants from further implementing and enforcing provisions of the regulations, specifically the Mandate, asserting that the Mandate violates Plaintiffs' rights to the free exercise of religion and the freedom of speech under the First Amendment, the Religious Freedom Restoration Act, and the Administrative Procedure Act.  (Comp., ¶ 9)  Plaintiffs seek a Declaratory Judgment that the regulations, specifically the Mandate, violate Plaintiffs' rights to the free exercise of religion and the freedom of speech under the First Amendment, the Religious Freedom Restoration Act, and the Administrative Procedures Act.  (Comp., ¶ 10)

GDC is the President of MKC and its 50% shareholder; RWC is the Vice President of MKC and its other 50% shareholder.  (Comp., ¶ 19)  GDC and RWC are Christians and faith-driven individuals who are responsible for setting all policies that govern the conduct and all phases of business of MKC.  (Comp., ¶ 19)  MKC has a workforce of over 120 full-time employees.  (Comp.,

3

¶ 57) For decades, GDC and RWC, via MKC, formulated MKC's health insurance policy with Blue Cross/Blue Shield of Michigan, which specifically excluded contraception, abortion, drugs commonly referred to as "life style drugs," and otherwise exempted MKC from paying, contributing, or supporting contraception and abortion for others, or for "life style drugs."  (Comp., ¶ 20) Plaintiffs ensured that their insurance policy contained these exclusions because they adhere to the Catholic Church's teachings regarding immorality of artificial means of contraception and sterilization, and they believe, among other things, that actions intended to terminate an innocent human life by abortion are gravely sinful.  (Comp., ¶ 21) GDC and RWC have always managed and operated MKC in a way that reflects the teachings, mission, and values of their Christian faith. (Comp., ¶ 24)  Plaintiffs also support financially and otherwise, Catholic fundraisers and other events.  (Comp., ¶ 24)  They have refused to provide financial support or otherwise, for events or entities that do not reflect the teachings, mission, and values of their Catholic faith, including requiring that their facilities remain closed and otherwise not servicing any of their customers on Sundays, eliminating any organization from a supplier list that knowingly supports, endorses, or contributes to organizations that actively participate in killing people, such as Planned Parenthood. (Comp., ¶ 24)

The Mandate not only forces Plaintiffs to finance, support and endorse contraception, abortion, and related education and counseling as health care, but also subverts the expression of Plaintiffs' religious beliefs, and the beliefs of millions of other Americans. (Comp., ¶ 40)  Plaintiffs claim that Defendants' refusal to accommodate the conscience of Plaintiffs, and of other Americans who share Plaintiffs' religious views, is highly selective.  (Comp., ¶ 47) Numerous exemptions exist in the ACA, which appear arbitrary and were granted to employers who purchase group insurance

which evidences that Defendants do not mandate that all insurance plans need to cover preventive services.  (Comp., ¶ 47)

Plaintiffs do not qualify for the "religious employer" exemption contained in 45 C.F.R. § 147.130(a)(1)(A) and (B).  (Comp., ¶ 66)  Since Plaintiffs do not qualify for the "religious employer" exemption, they are not permitted to take advantage of the "temporary safe-harbor" set forth at 77 Fed. Register 8725 (Feb. 15, 2012).  (Comp., ¶ 67)  On January 20, 2012, Defendant Sebelius announced that there would be no change to the religious exemption, but that Defendant HHS has not released any official rule implementing either the one-year extension or the additional forced-speech requirement that applies to Plaintiffs. (Comp., ¶ 132)  Plaintiffs assert they have complied with the Mandate, despite the fact that Plaintiffs are violating the teachings of their religious beliefs.  (Comp., ¶ 132)

Motions for Leave to File *Amicus Curiae* Brief were filed by the American Civil Liberties Union and American Civil Liberties Union Fund of Michigan (collectively, "ACLU") and the Attorney General for the State of Michigan.  To date, no opposition has been filed to the motions, other than the footnote noted in Plaintiffs' reply brief, "[f]iled Amicus Curiae Briefs that misrepresent social science data are not neutral or objective an represent misguided advocacy." (Reply Br., n. 1)

## II.    ANALYSIS

### A.    Preliminary Injunction Standard

"The court may issue a preliminary injunction only on notice to the adverse party."  Fed. R. Civ. P. 65(a)(1).  Four factors must be balanced and considered before the Court may issue a preliminary injunction under Rule 65(a):  1) the likelihood of the plaintiff's success on the merits;

2) whether plaintiff will suffer irreparable injury without the injunction; 3) the harm to others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989). The first factor is the most critical inquiry of the four criteria. *Mason County Med. Ass'n v. Knebel*, 563 F.22d 256, 261 (6th Cir. 1977). In making its determination the "district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 399 (6th Cir. 1997).

### B.     Likelihood of Plaintiff's Success on the Merits

Plaintiffs assert the Mandate violates Plaintiffs' rights under the RFRA and the First Amendment of the Constitution as a corporate entity and as owners of the entity. Defendants respond that Plaintiffs have not shown a likelihood of success on their claim under the RFRA and the First Amendment's Free Exercise and Free Speech Clauses. Plaintiffs' RFRA and First Amendment claims are addressed below.

### 1.     RFRA

The RFRA strictly prohibits the Government from substantially burdening a person's exercise of religion, 42 U.S.C. § 2000bb-1(a), except when the Government can demonstrate that application of the burden to the person furthers a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(b). The RFRA was enacted in response to the Supreme Court's decision in *Employment Division, Department of Human Services of Oregon v. Smith,* 494 U.S. 872 (1990), where the Supreme Court held that the right to free

6

exercise of religion under the First Amendment does not exempt an individual from a law that is neutral and of general applicability, and explicitly disavowed the test used in earlier decisions which prohibited the government from substantially burdening a plaintiff's religious exercise unless the government could show that its action served a compelling interest and was the least restrictive means to achieve that interest. 42 U.S.C. § 2000bb. The purpose of the RFRA was to "restore the compelling interest test" as set forth in *Sherbert v. Verner,* 374 U.S. 398 (1963) and *Wisconsin v. Yoder,* 406 U.S. 204 (1972).

The Court takes as true, Plaintiffs' deeply held religious beliefs. However, courts have held that the Mandate in question applies only to the corporate entity, not to its officers or owners, and that as to the individual owners, any burden imposed on them individually by the contraception mandate is remote and too attenuated to be considered substantial for purposes of the RFRA. *Gilardi v. Sebelius,* 2013 WL 781150, at *9 (D.D.C. Mar. 3, 2013); *Conestoga Wood Specialties Corp. v. Sebelius,* 917 F.Supp.2d 394, 415-16 (E.D. 2013); *Grote v. Sebelius,* 708 F.3d 850, 858-59 (7th Cir. 2013)(dissent).

The Tenth Circuit, in addressing a motion for an injunction pending resolution of the appeal on the Mandate issue found that the plaintiffs/appellants failed to demonstrate entitlement to such relief. *See Hobby Lobby Stores, Inc. v. Sebelius,* 2012 WL 6930302 at *1 (10th Cir. Dec. 20, 2012). Three types of preliminary injunctions noted by the Tenth Circuit are specifically disfavored: injunctions that alter the status quo (the last peaceable uncontested status existing between the parties before the dispute developed); mandatory injunctions (requiring the nonmoving party to take affirmative action before trial on the merits); and injunctions that afford the movant all of the relief it could recover at the conclusion of a full trial on the merits. *Id.* The movant must show the

7

preliminary injunction factors "weigh heavily and compellingly in its favor." *Id.* The Tenth Circuit, in denying the request for injunction, found that the plaintiffs/appellants failed to satisfy their burden as to the first element on their RFRA claim, that the challenged mandate substantially burdened their exercise of religion. *Id.* at *2. When plaintiffs/appellants do not meet this burden, there is no need to further consider whether the defendants have shown that the mandate is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. *Id.* The Tenth Circuit agreed with the district court's substantial-burden analysis that:

> [T]he particular burden of which plaintiffs complain is that funds, which plaintiffs will contribute to a group health plan, might, after a series of independent decisions by health care providers and patients covered by the [corporate] plan, subsidize *someone else's* participation in an activity that is condemned by plaintiff[s'] religion. Such an indirect and attenuated relationship appears unlikely to establish the necessary "substantial burden."

*Id.* at *3 (quoting *Hobby Lobby Stores, Inc. v. Sebelius,* 870 F. Supp. 2d 1278, 1294 (W.D. Okla. 2012)).

Plaintiffs in this case raise a similar argument that the Mandate substantially burdens their religious beliefs since the corporate entity providing at least part of the funds for its employees and its shareholder holds religious beliefs contrary to the Mandate's requirement that women are provided with birth control choices. The Tenth Circuit's analysis on this issue applies in this instance because  an employee's participation (specifically women) after consultation with healthcare providers, as to whether to take advantage of the birth control choices in the Mandate is indirect and attenuated to the Plaintiffs' religious beliefs. The employee may or may not participate in the Mandate's offer.

On leave to appeal to the United States Supreme Court as to the denial of the preliminary injunction motion, Justice Sonya Sotomayor found that the applications did not satisfy the demanding standard for extraordinary relief sought because it is not "indisputably clear" that the applicants are entitled to such relief. *Hobby Lobby Stores, Inc. v. Sebelius,* 133. S.Ct. 641, 643 (Dec. 26, 2012) (in chambers). Justice Sotomayor noted that the Supreme Court has yet to address similar RFRA or free exercise of religion claims brought by closely held for-profit-corporations and their controlling shareholders alleging that the mandatory provision of certain employee benefits substantially burdens their exercise of religion. *Id.* Justice Sotomayor recognized that lower courts have diverged on whether to grant temporary injunctive relief to similarly situated plaintiffs raising similar claims and that no court has issued a final decision granting permanent relief with respect to such claims. *Id.* While the applicants allege irreparable harm if they are forced to choose between complying with the contraception-coverage requirement and paying significant fines, they cannot show that an injunction is necessary or appropriate to aid in the Supreme Court's jurisdiction. *Id.*

The Sixth Circuit has addressed a motion for an injunction pending an appeal of the plaintiffs' motion for preliminary injunction which was denied by the district court in the Western District of Michigan. *Autocam Corp. v. Sebelius,* Case No. 12-2673 (Dec. 28, 2012) (Moore, Rogers and Griffin). The panel noted Justice Sotomayor's decision referenced above. Although the panel noted that the divergence of opinion by the district courts establishes the possibility of success on the merits, in light of the lower court's reasoned opinion and the Supreme Court's recent denial of an injunction pending appeal, the panel concluded that the plaintiffs had not demonstrated more than a possibility of relief. *Id.* at 2. The panel further noted that purely monetary damages, in this case

9

the penalty the corporate entity may have to pay, do not warrant an injunction. *Id.* at 3. Also, if the penalties are codified as a tax, which the district court so noted, then taxes cannot be subject to a preliminary or permanent enjoinment. *Id.; see Autocam Corp. v. Sebelius,* 2012 WL 6845677 (W.D. Mich. Dec. 24, 2012)(Jonker).

As stated by Justice Sotomayor and the Sixth Circuit, there are divergent opinions as to whether preliminary injunction should be granted pending a hearing on the merits before the district court on the Mandate issue based on a claim under the RFRA. In light of the initial issue of whether a corporate entity and its shareholder have such an established right under the RFRA, Plaintiffs in this case have not carried their burden that they are likely to succeed on the merits.

### 2.     First Amendment Free Exercise Clause

Plaintiffs argue that the HHS Mandate violates the Free Exercise Clause of the First Amendment to the United States Constitution.

The Free Exercise Clause is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority. *Sch. Dist. of Abington Twp. v. Schempp,* 377 U.S. 203, 223 (1963). Religious belief takes shape within the minds and hearts of individuals, and its protection is one of the more uniquely human rights provided by the Constitution. Courts have held that the nature, history and purpose of the Free Exercise Clause demonstrate that it is one of the "purely personal" rights and as such, is unavailable to a secular, for-profit corporation. *See, Eden Foods, Inc. v. Sebelius,* 2013 WL 1190001 at * 4 (E.D. Mich. Mar. 22, 2013). An incorporation's basic purpose is to create a legal entity, with legal rights, obligations, powers, and privileges different from those of natural individuals who created it, who own it, or whom it employs. *Id.* (citing *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 163 (2001)). The separation between a corporation

10

and its owners means the corporation is not the alter ego of its owners for purposes of religious belief and exercise. *Id.*

For the same reasons set forth above under the RFRA analysis and the law cited regarding corporate entities, MKC has not carried its burden that it will likely succeed on the merits on its claim under the Free Exercise Clause of the First Amendment.

Regarding the individual shareholders of MKC, the Court is not persuaded at this time that they have demonstrated that the Mandate violates the Free Exercise Clause based on the argument that the Mandate is not neutral nor generally applicable.

The protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993). Where a law is found to violate the Free Exercise Clause, it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest. *Id.* at 533. The Free Exercise Clause is not violated by a "valid and neutral law of general applicability on the ground that the law proscribes conduct that a plaintiff's religion prescribes. *Employment Div., Dep't of Human Res. of Or. v. Smith,* 494 U.S. 872, 879 (1990). A neutral law of general applicability need only be "rationally related to a legitimate government objective" to be upheld. *Combs v. Homer-Ctr. Sch. Dist.,* 540 F.3d 231, 243 (3d Cir. 2008). Courts have held that the Women's Preventive Healthcare Regulations are not specifically targeted at conduct motivated by religious belief. *O'Brien v. U.S Dep't of Health & Human Services,* 894 F.Supp.2d 1149, 1161-62 (E.D. Mo. 2012). Even though exemptions were made for religious employees, this does not show that the regulations seek to burden religion but that the government made efforts to accommodate religious beliefs. *Id.* The

11

purpose of the Women's Preventive Healthcare Regulations is not to target religion, but instead to promote public health and gender equality. *Id.* at 1161; *Hobby Lobby,* 870 F.Supp.2d at 1289-90. Since courts have held that the regulations at issue do not offend the Free Exercise Clause, the individual shareholders have not carried their burden to show that they will likely succeed on the merits of their Free Exercise Clause claim.

### 3.      First Amendment Establishment Clause

Plaintiffs argue that their constitutional right under the Establishment Clause of the First Amendment is violated by the Mandate.

The Establishment Clause commands that one religious denomination cannot be officially preferred over another. *Larson v. Valente,* 456 U.S. 228, 244 (1982). Strict scrutiny is applied to a law that discriminates among religions by aiding one religion or preferring one religion over another. *Id.* at 246. A statute that singles out a particular religious sect for special treatment is unconstitutional. *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet,* 512 U.S. 687, 703-07 (1994). Statutes do not violate the Establishment Clause if no particular sectarian affiliation or theological position is identified. *Gillette v. United States,* 401 U.S. 437, 450-51 (1971).

Plaintiffs have not carried their burden to show at this stage of the proceedings that the preventive services coverage set forth in the Mandate grants any denominational preference or discriminate against any particular religious sect or denomination. The Mandate specifically does not promote one religious organization over another.

### 4.      First Amendment Free Speech Clause or Right to Expressive Association

Plaintiffs argue that the Mandate violates their right to Free Speech and the right to Expressive Association.

The right to free speech "prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47, 61 (2006). Plaintiffs have not cited to any provision in the Mandate that directs Plaintiffs to say certain things about the Mandate. Nothing in the Mandate prohibits Plaintiffs from expressing their views and disagreements about the Mandate. Plaintiffs have not carried their burden to show that the Mandate violates their right to free speech.

### 5.    Administrative Procedure Act

Plaintiffs claim that Defendants violated the Administrative Procedure Act when the Mandate was issued.

The rulemaking procedure of the APA requires that notice of a proposed rule be given and that the public is invited to comment on the proposed rule. Once a rule is adopted, a statement must be made as to the basis and purpose of the rule. 5 U.S.C. § 553(b) & (c). Courts that have addressed the Mandate at issue as to the APA challenge have found that this claim is baseless. *See Grote v. Sebelius,* 2012 WL 6725905 at *11 (S.D. Ind. Dec. 27, 2012). An amendment to the interim final regulations authorizing to exempt group health plans sponsored by certain religious employers and associated group health insurance coverage from any requirement to cover contraceptive services was issued on August 3, 2011. 76 Fed. Reg. 46,621. The comment period was 60 days. *Id.* at 46,621. Thousands of comments were received and considered. A definition of "religious employer" was thereafter adopted. 77 Fed. Reg. at 8,726-27.

Plaintiffs have not shown for purposes of this preliminary injunction proceeding that the APA was violated.

### C.    Irreparable Injury

Because the Court finds Plaintiffs have not carried their burden as to the likelihood of success on the merits factor, the Court need not address the remaining factors. Even if Plaintiffs could meet the likelihood of success factor, Plaintiffs harm is monetary. As noted above by the Sixth Circuit panel, purely monetary damages do not warrant an injunction. *Autocam,* Case No. 12-2673 at 3. In addition, if the penalties are codified as a tax, which the district court noted, then taxes cannot be subject to a preliminary or permanent enjoinment. *Id.; see Autocam,* 2012 WL 6845677. It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *Overstreet v. Lexington-Fayette Urban County Government,* 305 F.3d 566, 579 (6th Cir. 2002).

In addition, Plaintiffs' delay in filing the instant suit undermines this factor. The definition of "religious employer" was issued in August 2011 and the final definition was adopted in February 2012. Plaintiffs waited until March 2013 to file the instant lawsuit seeking to be exempted from the Mandate.

**D.     Harm to Others and Public Interest**

Because Plaintiffs are unable to meet the likelihood of success on the merits and irreparable injury factors, the two most important factors, the harm to others and public interest factors need not be addressed. However, based on both parties' briefs and *amici* briefs, these two remaining factors do not weigh in favor of any party. There is public interest in being able to exercise one's religious belief under the RFRA and the First Amendment. There is also public interest in providing healthcare options to all.

**III.     CONCLUSION**

For the reasons set forth above,

14

IT IS ORDERED that the Emergency Motion for Preliminary Injunction **(Doc. No. 20)** is

DENIED.

IT IS FURTHER ORDERED that the Motions for Leave to File *Amicus Curiae* Briefs **(Doc.**

**Nos. 26 and 31)** are GRANTED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 13, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 13, 2013, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager